DANIEL E. WILCOXEN, ESQ. / SBN: 54805
dan@wilcoxenlaw.com
DREW M. WIDDERS, ESQ. / SBN: 245539
dwidders@wilcoxenlaw.com
BLAIR H. WIDDERS, ESQ. / SBN: 301741
bwidders@wilcoxenlaw.com
**WILCOXEN CALLAHAM, LLP**
2114 K Street
Sacramento, CA 95816
Telephone: (916) 442-2777
Facsimile: (916) 442-4118

Attorneys for Plaintiff
VANBUREN LEMONS, M.D.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANBUREN LEMONS, M.D., | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **[Jury Trial Demanded]** |
| AMERICAN ASSOCIATION OF NEUROLOGICAL SURGEONS, INC.; and DOES 1 through 100, inclusive, | |
| Defendants. | |

COMES NOW Plaintiff, VANBUREN LEMONS, M.D., and complains against Defendants, AMERICAN ASSOCIATION OF NEUROLOGICAL SURGEONS; and DOES 1-50, and each of them, and alleges as follows:

### GENERAL ALLEGATIONS

1.  Plaintiff, VANBUREN LEMONS, M.D. ("Dr. LEMONS"), is a California board certified neurosurgeon. He graduated from the University of California, Davis, School of Medicine in 1986 and from the University of California Davis, School of Medicine,

{00351250}

Department of Neurological Surgery as Chief Resident in 1992. Dr. LEMONS has been a licensed and practicing neurosurgeon in the State of California since 1992. Dr. LEMONS has had numerous appointments, including but not limited to Assistant Professor of the Department of Neurological Surgery at University of California, Davis; Medical Director of Neurosurgery at Mercy San Juan Medical Center; Consultant Neurosurgeon and Ringside Physician to the California State Athletic Commission; and Neurological Consultant and Medical Advisory Board Member to the Retired Boxers Association. Dr. LEMONS has been published in neurosurgery related articles over 100 times. He practices neurosurgical medicine in the Counties of Sacramento and Placer, State of California, Dr. LEMONS has been qualified as an expert witness in California Superior Courts, including but not limited to, the Counties of Sacramento, Placer, and Stanislaus.

2. Defendant, AMERICAN ASSOCIATION OF NEUROLOGICAL SURGEONS ("AANS"), is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the County of Cook, State of Illinois. AANS is not a licensing body. AANS is an association of neurosurgeons that offers educational opportunities and publications to its members. AANS has members in states including in California, where AANS' Southwest Regional Director resides.

3. The true names and capacities of Defendants, and each of them, sued herein as DOES 1 through 100, inclusive, are presently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names, pursuant to Code of Civil Procedure §474. Plaintiff is informed and believes and thereon alleges that the fictitiously named Defendants, and each of them, are negligently or in some manner legally responsible to Plaintiff for the events and happenings herein referred to and proximately caused damages to Plaintiff as set forth herein. Plaintiff will seek leave of court to amend this Complaint to insert the true names and capacities of said fictitiously named Defendants, and each of them, when the same have been ascertained.

4. Plaintiff is informed and believes that each of the Defendants was the agent, partner, joint venturer, co-conspirator, lessor, lessee, alter ego, ostensible agent and/or

employee of each of the remaining Defendants, and others named herein as Doe Defendants, and in doing the acts or things alleged herein were acting within the course and scope of said agency, employment and/or other relationship stated herein, and/or Defendants ratified the conduct of the remaining Defendants.

## JURISDICTION AND VENUE

5. Plaintiff incorporates by reference all allegations set forth in paragraphs 1 – 4, as though fully set forth herein.

6. Dr. LEMONS is a citizen of California. AANS is a citizen of Illinois with its principal place of business in Illinois. There is diversity as required by 28 USC §1332.

7. Dr. LEMONS' claims arise from conduct in California. That eight (8) members of AANS who as part of AANS' Professional Conduct Committee participated in a Hearing in California to decide if Dr. LEMONS demonstrated unprofessional conduct by testifying in a medical malpractice case in Idaho against another member of AANS providing expert opinions that the Professional Conduct Committee thought violated certain AANS' rules. Following the Hearing, these Defendants authored a Report, based on the Hearing, to the Board of Directors of AANS. AANS then published statements from this Report on the internet that Dr. LEMONS' asserts are defamatory, causing him harm in California. Even more specifically, these damages were sustained in counties within the Eastern District of California, where said statements harmed Dr. LEMONS' occupation, reputation, and income. Venue in the Eastern District of California in proper. Furthermore, pursuant to Local Rule 120(d), this case should be filed in the United States District Court sitting in Sacramento.

8. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## COUNT 1

*(Defamation)*

Plaintiff, VANBUREN LEMONS, M.D., alleges as the first Count against Defendants AMERICAN ASSOCIATION OF NEUROLOGICAL SURGEONS; and DOES 1 - 50, and each of

{00351250}

...
...

them, as follows:

9. Plaintiff incorporates by reference all allegations set forth in paragraphs 1 – 8, as though fully set forth herein.

10. Dr. LEMONS, at the time a member of AANS, testified as an expert witness in a medical malpractice lawsuit in Idaho in which Michael V. Hajjar, M.D., also a neurosurgeon and a member of AANS, was a defendant.

11. During the Idaho lawsuit including at trial, Dr. LEMONS testified that Dr. Hajjar's treatment of the plaintiff for intracranial pressure following a head injury was below the standard of care for neurosurgeons, and that Dr. Hajjar's treatment caused the plaintiff injury. This testimony by Dr. LEMONS was related to and made during litigation and is therefore privileged pursuant to the laws of California and Idaho as well as the United States' Constitution's First Amendment.

12. Following the Idaho lawsuit, Dr. Hajjar submitted a Complaint to AANS regarding Dr. LEMONS' criticisms of his treatment of the plaintiff in the Idaho litigation. Dr. Hajjar's Complaint caused AANS to convene eight members of AANS' Professional Conduct Committee at a Hearing in San Francisco, California on October 20, 2019. The Hearing was completed in less than one day. A court reporter transcribed the Hearing, which was titled, "Michael V. Hajjar, M.D., Complainant v. Vanburen R. Lemons, M.D., Respondent". The subject matter of the Hearing was whether Dr. LEMONS had demonstrated unprofessional conduct by violating certain AANS' Rules by testifying that he was critical of Dr. Dr. Hajjar's treatment of an Idaho personal injury plaintiff. The Hearing was convened despite Dr. LEMONS having resigned from AANS, for AANS refused to accept his resignation so that they could punish him for testifying against another AANS' member.

13. Following the Hearing, the AANS' Professional Conduct Committee ("PCC") authored a Report titled, Report of the Professional Conduct Committee of the American Association dated December 16, 2019 ("Report"). The Report stated that Dr. LEMONS had violated AANS Rules for Neurosurgical Medical/Legal Expert Opinion Services, Section A,

{00351250}

subsections A.1 – A.4 by testifying during the Idaho lawsuit regarding his opinions of Dr. Hajjar's treatment: Rule A.1 (The neurosurgical expert witness shall be an impartial educator for attorneys, jurors and the court on the subject of neurosurgical practice) because his testimony was biased to favor the plaintiff; Rule A.2 (The neurosurgical expert witness shall represent and testify as to the practice behavior of a prudent neurological surgeon, giving different viewpoints, if such there are) because his opinions had no room for any reasonable alternative course of treatment; Rule A.3 (The neurosurgical expert shall identify as such any personal opinions that vary significantly from generally accepted neurosurgical practice) because he expressed personal opinions that allegedly varied from generally accepted neurosurgical practice and did not identify them as personal opinions; and Rule A.4 (The neurosurgical expert witness shall recognize and correctly represent the full standard of care and shall with reasonably accuracy state whether a particular action was clearly within, clearly outside of, or close to the margins of the standard of neurosurgical care) because he failed to acknowledge that the standard of care includes a range of options. The AANS' PCC recommended to AANS' Board Directors that, because in exercising his First Amendment rights by speaking freely and honestly in litigation, Dr. LEMONS should be suspended from AANS for one year.

14. On November 21, 2020, AANS' Board of Directors voted to suspend Dr. LEMONS' AANS' membership for one year. The AANS' Board of Directors ratified recommendation of the AANS' Professional Conduct Committee by publishing Dr. LEMONS' one year suspension on the internet on or about February 2, 2021, where it appeared on Google as the second link when searching on Google for "Dr. Vanburen Lemons", directly below Dr. LEMONS' Sutter Health link. The link stated, "Notice of Disciplinary Action". The AANS' Board of Directors furthermore ratified the statements made by the Professional Conduct Committee by publishing defamatory statements that were available when the link was selected that stated that Dr. LEMONS received a One Year Suspension from AANS for "unprofessional conduct while serving as an expert witness in medical malpractice lawsuits" and for violating Sections A.1, A.2, A.3 and A.4 of

the AANS Rules because he "demonstrated improper advocacy, excluded valid alternative viewpoints, did not identify personal opinions that varied from generally accepted neurosurgical practice, and failed to acknowledge that the standard of care includes a range of options." This posting but not the link was removed from the internet sometime after February 2, 2021, so that when selecting the link, the defamatory statements in the posting were no longer available to view. However, on or about March 26, 2024, the posting with the same defamatory statements was republished by AANS' Board of Directors on the internet in its entirety when the same link was selected. (See **Exhibit 1** attached hereto.)

15. AANS made these statements based on the less than one day Hearing in San Francisco. AANS failed to use reasonable care to determine the truth and/or falsity of the statements. Said statements were false. Dr. LEMONS offered his expert opinion during litigation. His opinion was based on his lengthy and illustrious career practicing neurosurgery as applied to his evaluation of the care provided to the Idaho plaintiff by Dr. Hajjar. AANS' PCC and/or its Board of Directors failed to use due diligence prior to publishing these statements and failed to understand that differences of opinion spoken during litigation are privileged communications and protected by the litigation privilege and United States' Constitution's First Amendment.

16. AANS' PCC and/or AANS' Board of Directors ratified and intentionally published these statements to protect its complaining member Dr. Hajjar from being criticized in litigation. As neurosurgeons, AANS' and/or AANS' Board of Directors had the education and training to know that their statements were false or had serious doubts about the truth of the statements. AANS therefore acted with malice and oppression, in that their conduct was despicable and carried on with a willful and conscious disregard of the rights of Dr. LEMONS and subjected him to cruel and unjust hardship in conscious disregard of his rights. Dr. LEMONS is entitled to an award of punitive damages pursuant to California Civil Code section 3294.

///

17. By publishing and republishing the defamatory statements on the internet, AANS' statements made those statements available to members of the medical and legal communities in California. The members of the medical and legal communities who read the statements reasonably understood that the statements were about Dr. LEMONS, who was identified by name in the statements. Further, the members of the medical and legal communities who read the statements reasonably understood the statements to mean that Dr. LEMONS had engaged in unprofessional conduct and that he had demonstrated improper advocacy, excluded valid alternative viewpoints, did not identify personal opinions that varied from generally accepted neurosurgical practice, and failed to acknowledge that the standard of care includes a range of options. These statements thus caused injury to Dr. LEMONS' occupation, reputation and caused him shame, mortification, and emotional distress. Further, the members of the medical and legal communities knew of facts and circumstances because of their occupations in the medical and legal communities and, because of their knowledge, Dr. LEMONS was injured in his occupation and shamed, and others were discouraged from associating, dealing, or employing with him.

18. Furthermore, by publishing and republishing these defamatory statements in this widely available manner, it was reasonably foreseeable that these statements would be republished by others. The members of the medical and legal communities where Dr. LEMONS practices neurosurgery and is employed as an expert witness have in fact learned of and republished the defamatory statements, thereby causing further harm to Dr. LEMONS' occupation and reputation and causing him further shame, mortification, and emotional distress.

19. On April 19, 2023, defendant's counsel in litigation entitled, *Adam Williamson, et al. v. Lorenzo Aguilar, M.D.*, Stanislaus County Superior Court case no.: CV-19-004681, republished the defamatory statements about Dr. Lemons, the plaintiffs' expert witness, in Defendants' Trial Brief. Section VIII of the Trial Brief is entitled, Plaintiff's Expert VanBuren Lemons was disciplined by the American Association of

{00351250}

Neurological Surgeons (AANS). Dr. Aguilar's defense counsel republished the same defamatory statements from AANS' posting in stating that Dr. Lemons, "demonstrated improper advocacy, excluded valid alternative viewpoints, did not identify personal opinions that varied from generally accepted neurosurgical practice, and failed to acknowledge that the standard of care includes a range of options". The Trial Brief was filed by the Stanislaus County Court Clerk on April 25, 2024, and uploaded to the Court's Public Portal website, where it is available to the public. After opposing motions in limine regarding the admissibility of Dr. LEMONS' suspension from AANS and the AANS statements, the Court held a California Evidence Code section 402 Hearing on May 2, 2023. After the 402 Hearing, the Court ordered that defendant's counsel was permitted to question Dr. LEMONS regarding AANS' finding that he had violated its rules by demonstrating improper advocacy, excluding alternative viewpoints, and not identifying personal opinions that varied from generally accepted neurosurgical practice. The questioning by defendant's counsel was then conducted in open court, in front of the jury, the Court, and others who were present in the courtroom.

20. On October 30, 2023, in litigation entitled, *Melissa Ann Ratcliff v. Vance Chandler, City of Sacramento, et al.*, defense counsel for the City of Sacramento sought documents from Dr. LEMONS as part of a deposition notice with request for production of documents. The documents sought included, "All documents relating to your suspension, from approximately February 2021 through February 2022, from the American Association of Neurological Surgeons", and "Your written explanation for testimony in the medical malpractice case, for which the American Association of Neurological Surgeons suspended you from approximately February 2021 to February 2022." Defense counsel for the City of Sacramento thus attempted to force Dr. LEMONS to republish the documents from AANS, including the AANS' Report that contained the defamatory statements.

21. The above are just two examples of a large number of ongoing republishing of AANS' defamatory statements in numerous medical malpractice cases in California wherein Dr. LEMONS has been retained as an expert witness. As a result, Dr. LEMONS has

suffered injury to his occupation both as a neurosurgeon, an expert witness, to his reputation, has been shamed, mortified, and suffered emotional distress.

WHEREFORE, Plaintiff pray for judgment against Defendants, and each of them, as follows:

1. For special damages for loss of income;
2. For general damages for harm to his reputation and for shame;
3. For punitive damages as a way to punish Defendants for acting with malice;
4. For incidental expenses;
5. For interest and/or prejudgment interest on all damages sought and/or incurred herein at the legal lawful rate;
6. For costs of suit incurred herein; and
7. For such other and further relief as the court may deem proper.

DATED: April 11, 2024                         **WILCOXEN CALLAHAM, LLP**

By: _____
DANIEL E. WILCOXEN
BLAIR H. WIDDERS
Attorneys for Plaintiff

# EXHIBIT 1

# Notice of Disciplinary Action

By **AANS Neurosurgeon** - February 2, 2021



*Stacks of modern newspapers, composed in form of word NEWS on white background. Concept of business news*

The following disciplinary actions have been taken against members of the American Association of Neurological Surgeons (AANS) for unprofessional conduct while serving as an expert witness in medical malpractice lawsuits.

**One Year Suspension –** The Board voted to suspend the membership of VanBuren R. Lemons, MD, FAANS of Sacramento, California for a period of one year for violating Sections A.1, A.2, A.3 and A.4 of the AANS Rules for Neurosurgical Medical/Legal Expert Opinions Services and, consequently, Section F(2) of the AANS Code of Ethics. The violations stem from Dr. Lemons' expert testimony in a medical malpractice lawsuit that the decision to extubate a patient with head trauma on the third day after injury violated the standard of care, and that all the subsequent difficulty with ICP control, the ultimate need for surgery, and any resulting neurological deficit was solely or primarily the result of extubation. The Board agreed with the Professional Conduct Committee that the treatment of the patient, including the extubation decision, fell within the range of the standard of care. Consequently, the Board agreed that Dr. Lemons demonstrated improper advocacy, excluded valid alternative viewpoints, did not identify personal opinions that varied from generally accepted neurosurgical practice, and failed to acknowledge that the standard of care includes a range of options, including the choice of extubation and treatment of the ICP. Dr. Lemons did not pursue an appeal to the general membership.