1  ICE MILLER
   MICHAEL CHABRAJA (*pro hac vice* application pending)
2  ALEXANDER S. VALDES (*pro hac vice* application pending)
   200 W. Madison Street, Suite 3500
3  Chicago, IL 60606
   Telephone:  312.726.8149
4  Facsimile:  312.726.7102
   michael.chabraja@icemiller.com
5  alex.valdes@icemiller.com

6  DOWNEY BRAND LLP
   WILLIAM R. WARNE (Bar No. 141280)
7  bwarne@downeybrand.com
   DARIA A. GOSSETT (Bar No. 316717)
8  dgossett@downeybrand.com
   621 Capitol Mall, 18th Floor
9  Sacramento, California 95814
   Telephone:  916.444.1000
10 Facsimile:  916.444.2100

11 Attorneys for Defendant,
   AMERICAN ASSOCIATION OF
12 NEUROLOGICAL SURGEONS, INC.

13              UNITED STATES DISTRICT COURT

14              EASTERN DISTRICT OF CALIFORNIA

15

16 | VANBUREN LEMONS, M.D., | Case No. 2:24-cv-01118-DAD-CKD |
|---|---|
17 | Plaintiff, | **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)** |
18 | v. | |
19 | AMERICAN ASSOCIATION OF NEUROLOGICAL SURGEONS, INC.; and | |
20 | DOES 1 through 100, inclusive, | Date:  September 17, 2024<br>Time:  1:30 p.m. |
21 | Defendants. | Crtrm.:  4 (15th floor) |
22 | | Judge:  Hon. Dale A. Drozd |

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 5

II. PERTINENT ALLEGATIONS AND FACTUAL BACKGROUND ................................ 6

III. LEGAL STANDARD ..................................................................................................... 8

IV. ARGUMENT ................................................................................................................ 10

    A. Dr. Lemons' Claim Is Barred by the One-year Statute of Limitations. ................ 10

        1. The AANS Cannot Be Liable for the Notice of Disciplinary Action Published in February 2021 ......................................................................... 10

        2. The AANS Cannot Be Liable for a Purported "Republication" of the Notice. ........................................................................................................ 10

    B. Dr. Lemons Seeks an Improper Judicial Review of the AANS' Private Disciplinary Decision. ........................................................................................... 12

    C. The Litigation Privilege Is Not Applicable to Disciplinary Action Taken by a Private, Voluntary Association. ........................................................................ 14

    D. The AANS Possessed an Absolute Privilege to Publish the Notice. .................... 15

    E. The Doe Defendants Should Be Dismissed With Prejudice. ................................ 16

V. CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Arnold v. Bay Fin. Co. LLC*,
  No. 1:21-CV-1182 JLT SKO, 2022 WL 658137 (E.D. Cal. Mar. 4, 2022) ........................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 9

*Avery v. Cmty. Hosp. of the Monterey Peninsula*,
  No. H042030, 2018 WL 4959641 (Cal. Ct. App. Oct. 15, 2018) ......................................... 15

*Balisteri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1990) ................................................................................................. 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 9

*Gardiner Fam., LLC v. Crimson Res. Mgmt. Corp.*,
  147 F. Supp. 3d 1029 (E.D. Cal. 2015) ............................................................................... 16

*Garter-Bare Co. v. Munsingwear, Inc.*,
  650 F.2d 975 (9th Cir. 1981) ............................................................................................... 16

*Hall v. Kraft Heinz Food Co. (LLC)*,
  No. 119CV00565LJOBAM, 2019 WL 2598764 (E.D. Cal. June 25, 2019) .................... 8, 11

*Harris v. Dillman*,
  No. 2:08CV0098-GEB-CMK, 2008 WL 5100224 (E.D. Cal. Dec. 1, 2008) ....................... 10

*Lazy Y Ranch LTD v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ................................................................................................. 9

*Preas v. Watchtower Bible & Tract Soc'y of N.Y.*,
  2015 WL 672152 (E.D. Cal. Feb. 17, 2015) ....................................................................... 10

*Roberts v. McAfee, Inc.*,
  660 F.3d 1156 (9th Cir. 2011) ............................................................................................. 11

*Rosenberg v. Am. Bowling Cong.*,
  589 F. Supp. 547 (M.D. Fla. 1984) ..................................................................................... 15

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ............................................................................................... 9

# TABLE OF AUTHORITIES - CONTINUED

**Page(s)**

*Teleflex Medical Incorporated v. National Union Fire Insurance Company Of Pittsburgh*,
    851 F.3d 976 (9th Cir. 2017) .................................................................................................. 9

*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012) ................................................................................................ 11

**State Cases**

*Shively v. Bozanich*
    (2003) 31 Cal.4th 1230 ........................................................................................................... 10

*Budwin v. Am. Psychological Assn.*
    (1994) 24 Cal.App.4th 875 ............................................................................................... 12, 14

*California Dental Assn. v. American Dental Assn.*
    (1979) 23 Cal.3d 346 .............................................................................................................. 13

*Dible v. Haight Ashbury Free Clinics, Inc.*
    (2009) 170 Cal.App.4th 843 ................................................................................................... 12

*Hee Shen Cemetery & Benevolent Ass'n v. Yeong Wo Ass'n*
    (2024) 100 Cal.App.5th 231 ................................................................................................... 13

*Kelly v. William Morrow & Co.*
    (1986) 186 Cal.App.3d 1625 .................................................................................................. 15

*Live Oak Publishing Co. v. Cohagan*
    (1991) 234 Cal.App.3d 1277 .................................................................................................. 11

*Traditional Cat Assn., Inc. v. Gilbreath*
    (2004) 118 Cal.App.4th 392 ................................................................................................... 11

*Wentland v. Wass*
    (2005) 126 Cal.App.4th 1484 ................................................................................................. 14

**State Statutes**

Cal. Code Civ. Proc. § 340(c) ....................................................................................................... 10

**Rules**

Rule 12(b)(6) ........................................................................................................................*passim*

DOWNEY BRAND LLP

## I. INTRODUCTION

This lawsuit arises out of a dispute between a private, voluntary professional association and one of its former members. Dr. Michael Hajjar ("Dr. Hajjar"), is a member of Defendant American Association of Neurological Surgeons, Inc. ("AANS" or "Defendant"). In November 2018, Dr. Hajjar instituted an internal grievance against another AANS member, Plaintiff Dr. VanBuren Lemons ("Dr. Lemons" or "Plaintiff"). In that grievance, Dr. Hajjar alleged that Dr. Lemons violated both the AANS Rules for Neurosurgical Medical/Legal Expert Opinion Services ("the Neurosurgical Expert Opinion Rules") and the AANS Code of Ethics. After fully adjudicating the grievance, the AANS Board of Directors found that Dr. Lemons had violated certain of the Neurosurgical Expert Opinion Rules and, consequently, voted to suspend his membership in the association for one year. Seeking to have this Court revisit the merits of the AANS' internal disciplinary decision, Plaintiff filed this action against the AANS and 100 unnamed Doe defendants.

In the lone claim of his Complaint, Plaintiff alleges that certain statements contained in the notice of suspension, which the AANS posted in its online publication in accordance with its rules and procedures, were defamatory. This claim fails as a matter of law. First, the claim is untimely– Dr. Lemons waited over three years to bring suit despite the one-year statute of limitations in California for defamation claims. Second, regardless of how he labels his claim, it is abundantly clear that Dr. Lemons is seeking to have this Court conduct a collateral inquiry into the merits of the AANS' decision to suspend his membership. California law is clear that a court will not intervene in the internal affairs of a private, voluntary membership organization such as the AANS. Third, Plaintiff's claim for defamation fails because as a member of the AANS, Dr. Lemons agreed to be bound by the AANS' rules and procedures. The rules and procedures clearly contemplate the type of publication that resulted from Dr. Lemons' suspension. Thus, the AANS possessed an absolute privilege to publish the factual findings and determinations arising out of the internal grievance.

/ / /

/ / /

## II. PERTINENT ALLEGATIONS AND FACTUAL BACKGROUND

Dr. Lemons is a neurosurgeon licensed in California where he practices neurosurgical medicine. Compl., ¶ 1. The AANS is an association of neurosurgeons that offers educational opportunities and publications to its members. *Id*. at ¶ 2. Dr. Lemons was a member of the AANS at all times relevant to the allegations in the Complaint. *Id*. at ¶ 10.

Dr. Lemons has served as an expert witness in a number of cases. *Id*. at ¶ 1. In 2018, Dr. Lemons testified as an expert witness in a medical malpractice lawsuit in Idaho (the "Idaho lawsuit") in which Dr. Hajjar was a defendant. *Id*. at ¶ 10. Dr. Hajjar is a neurosurgeon and a member of AANS. *Id*. Both during discovery and at trial, Dr. Lemons opined in the Idaho lawsuit that Dr. Hajjar's treatment of a patient for intracranial pressure following a head injury was below the standard of care for neurosurgeons, and, further, that Dr. Hajjar's sub-standard treatment caused the patient's injury. *Id*. at ¶ 11.

The AANS has an established set of governing documents that sets forth, among other things, the duties and responsibilities of all members and the rules/procedures for grievances alleging violations of the duties and responsibilities. Compl. ¶¶ 7, 10, 12-14; *Request for Judicial Notice* ("RJN") Exhs. A-C.  Each member of the AANS agrees to be bound by the association's governing documents. The governing documents are publicly available at: https://www.aans.org/About-Us/Governance/Bylaws-Codes-and-Guidelines. Relevant here, the AANS' governing documents establish a process by which a member may proffer charges alleging that another Member has failed to maintain good professional standing, which can involve violations of the AANS' Code of Ethics and/or the Neurosurgical Expert Opinion Rules.  RJN Ex. C at p. 1; Compl. ¶ 12.

Following a jury verdict in his favor in the Idaho lawsuit, Dr. Hajjar submitted an internal complaint to the AANS alleging that Dr. Lemons' expert testimony violated the Code of Ethics and the Neurosurgical Expert Opinion Rules. Compl., ¶ 12. Consistent with its procedures, the AANS convened a panel of eight members of its Professional Conduct Committee (the "PCC") and held a Hearing in San Francisco, California, on October 20, 2019, to evaluate Dr. Hajjar's complaint. *Id*. A court reporter transcribed the hearing. *Id*. Dr. Hajjar attended the hearing and

made a presentation regarding his treatment of the patient. Although Dr. Lemons received notice well in advance of the hearing, he elected not to attend. Following the hearing, the PCC authored a Report titled, Report of the Professional Conduct Committee of the American Association of Neurological Surgeons dated December 16, 2019 ("PCC Report").[1] (*Id*. at ¶ 13; see also RJN Exh. D.) The PCC's Report contained its findings regarding Dr. Hajjar's charges against Dr. Lemons. The PCC found that Dr. Lemons had violated four separate Neurosurgical Expert Opinion Rules in his testimony in the Idaho lawsuit. Notably, the PCC also found that Dr. Lemons did not violate four of the Neurosurgical Expert Opinion Rules raised by Dr. Hajjar. The PCC recommended to the AANS' Board of Directors that Dr. Lemons be suspended from the AANS for one year as a result of his violations of the Neurosurgical Expert Opinion Rules. *Id*.

On November 21, 2020, the AANS' Board of Directors met to consider the PCC's findings and recommendation. Following its own review and analysis of the evidence presented in the grievance, the Board accepted the PCC's findings and voted to suspend Dr. Lemons' membership for one year. *Id*. at ¶ 14. The AANS Professional Conduct Program fact sheet, which is posted on the AANS website and available to all members, states that "[u]pon finalization of any sanction, a brief write-up appears in [the online publication] *AANS Neurosurgeon*. The item will include the member's name and a brief summary of the action for which the member was sanctioned." RJN Ex. C at p. 2.

Consistent with these procedures, on February 2, 2021, the AANS published a Notice of Disciplinary Action (the "Notice") regarding the suspension of Dr. Lemons in *AANS Neurosurgeon* on the AANS website: https://www.aansneurosurgeon.org. Compl., ¶ 14; Compl., Ex. 1. The Notice is attached to Plaintiff's Complaint as Exhibit 1. The Notice stated, among other things, that the AANS suspended Dr. Lemons because he violated Sections A.1, A.2, A.3 and A.4 of the Neurosurgical Expert Opinion Rules and because he "demonstrated improper advocacy, excluded valid alternative viewpoints, did not identify personal opinions that varied from

/ / /

---

[1] The Court may take judicial notice of this document for the reasons set forth in the accompanying Request for Judicial Notice.

1   generally accepted neurosurgical practice, and failed to acknowledge that the standard of care
2   includes a range of options." Compl., ¶ 14.
3        Dr. Lemons clearly disagrees with the findings of the PCC and the AANS Board of
4   Directors in the grievance. He alleges in conclusory fashion that the PCC and Board of Directors
5   "failed to use due diligence prior to publishing these statements. . . . As neurosurgeons, [they] had
6   the education and training to know that their statements were false or had serious doubts about the
7   truth of the statements." *Id*. at ¶¶ 15-16.
8        Dr. Lemons alleges in his Complaint that the Notice (but not the link, somehow) was
9   removed from the internet sometime after February 2, 2021, so that when selecting the link, the
10  defamatory statements in the posting were no longer available to view. *Id*. at ¶ 14. He further
11  alleges that, on or about March 26, 2024, the AANS republished the Notice on the internet. *Id*.
12  While the AANS rejects the far-fetched allegation that the Notice was removed from the internet
13  (while maintaining the link) and then reposted, that allegation is immaterial for purposes of this
14  Motion to Dismiss.
15       In April 2023, a defense attorney in a separate medical malpractice lawsuit recited
16  statements from the Notice regarding Dr. Lemons in a trial brief that is available on the Stanislaus
17  County Superior Court website. *Id*. at ¶ 19. The defense attorney also questioned Dr. Lemons at
18  trial regarding the AANS' findings that Dr. Lemons violated the association's Neurosurgical
19  Expert Opinion Rules. *Id*. In October 2023, defense counsel for the City of Sacramento in a
20  separate lawsuit sought documents from Dr. Lemons regarding his suspension from the AANS as
21  part of a deposition notice. *Id*. at ¶ 20. There is no allegation that such documents were ever
22  produced. *See id*.
23       Dr. Lemons filed his Complaint against the AANS on April 12, 2024–more than thirty-
24  eight months after the AANS published the Notice.

25                 **III.**    <u>**LEGAL STANDARD**</u>

26       A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the
27  allegations set forth in the complaint. *Hall v. Kraft Heinz Food Co. (LLC)*, No.
28  119CV00565LJOBAM, 2019 WL 2598764, at *2 (E.D. Cal. June 25, 2019). Dismissal under

DOWNEY BRAND LLP

Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. As demonstrated below, Plaintiff has failed to allege sufficient facts to survive the AANS' Motion to Dismiss.

Lastly, in diversity cases, a "federal court must follow the state's intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Teleflex Medical Incorporated v. National Union Fire Insurance Company Of Pittsburgh*, 851 F.3d 976, 982 (9th Cir. 2017).

IV.     **ARGUMENT**

A.     **Dr. Lemons' Claim Is Barred by the One-year Statute of Limitations.**

    1.     **The AANS Cannot Be Liable for the Notice of Disciplinary Action Published in February 2021.**

"In California, claims for defamation are subject to a one-year statute of limitations." *Arnold v. Bay Fin. Co. LLC*, No. 1:21-CV-1182 JLT SKO, 2022 WL 658137, at *5 (E.D. Cal. Mar. 4, 2022) (citing Cal. Code Civ. Proc. § 340(c) *and Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1246 ("the statute of limitations for defamation . . . requires that an action be filed within one year of accrual of the cause of action"). "Causes of action for defamation accrue at the time of publication." *Arnold*, No. 1:21-CV-1182 JLT SKO, 2022 WL 658137, at *5 (citing *Shively*, 31 Cal.4th at 1247 *and Preas v. Watchtower Bible & Tract Soc'y of N.Y.*, 2015 WL 672152, at *3 (E.D. Cal. Feb. 17, 2015) ("Under California law, defamation claims are subject to a one-year statute of limitations, meaning they must be brought within one year of publication of the defamatory statement or they are time-barred from being heard in court")).

Dr. Lemons alleges that the defamatory statements that serve as the basis for his claim were published in the Notice on February 2, 2021. Compl., ¶¶ 14-18. Thus, the limitations period ended one year later on February 2, 2022.[2] Dr. Lemons did not file suit against the AANS until April 12, 2024. Therefore, any defamation claims that Dr. Lemons may have against the AANS based on the Notice are time-barred. *Harris v. Dillman*, No. 2:08CV0098-GEB-CMK, 2008 WL 5100224 (E.D. Cal. Dec. 1, 2008) (dismissing defamation claim without leave to amend where allegations showed the limitations period had expired).

    2.     **The AANS Cannot Be Liable for a Purported "Republication" of the Notice.**

Perhaps recognizing his claim is time-barred, Dr. Lemons alleges that the Notice was subsequently "republished." These allegations are insufficient as a matter of law. California law only allows a plaintiff to avoid the statute of limitations in limited circumstances that are not

---

[2] "The discovery rule is not applicable to these claims because [Dr. Lemons] was not prevented from accessing these defamatory statements." *Harris v. Dillman*, No. 2:08CV0098-GEB-CMK, 2008 WL 5100224, at *2 (E.D. Cal. Dec. 1, 2008).

applicable here. As set forth below, the Complaint identifies three alleged "republications," none of which rescue his time-barred claim for defamation against the AANS.

First, Dr. Lemons alleges that the AANS removed the Notice (but not the link) from its website sometime after February 2, 2021, and then around March 26, 2024, the AANS made the Notice available again on its website. Compl., ¶ 14. "The Ninth Circuit has held . . . that 'under California law, a statement on a website is not republished [and the statute of limitations is not reset] unless the statement itself is substantively altered or added to, or the website is directed to a new audience.'" *Hall*, No. 119CV00565LJOBAM, 2019 WL 2598764, at *5 (bracketed phrase in original) (citing *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012)). This "single-publication rule" arose in the context of defamation and other tort claims and "is designed to provide repose to defendants by precluding stale claims based on dated but still-lingering mass communications." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1168 (9th Cir. 2011). State and federal courts in California have determined that the single-publication rule applies to the internet under California law. *Id*. at 1167 ("Although the California Supreme Court has not addressed the issue, the California Courts of Appeal have uniformly applied the rule to websites."); *Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 404 (stating that "we have very little doubt" that the California Supreme Court would apply the single-publication rule to websites).

Here, Dr. Lemons has not and cannot allege that the AANS altered or added to the statements in the Notice, or that the AANS' website was ever directed to a new audience. Therefore, the Notice currently on the AANS' website is not a "republication" as a matter of law.

Second, although Dr. Lemons alleges that an attorney in a separate malpractice action referenced language from the Notice in April 2023 (Compl., ¶ 19), this allegation is insufficient to support a defamation claim against the AANS. In order to hold a defendant liable for defamation, "the publication must be done by the defendant." *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1284. "There is an exception to this rule. When it was foreseeable that a defendant's act would result in publication to a third person, the plaintiff may maintain a libel action." *Id*. "This exception has been limited to a narrow class of cases, usually where a plaintiff is compelled to republish the statements in aid of disproving them." *Id*. at 1285. Here, Dr. Lemons

does not complain that he has been compelled to republish the AANS' statements. Further, he has not alleged any facts sufficient to demonstrate that republication of the Notice by an attorney in a separate lawsuit was somehow foreseeable. The AANS cannot be expected to foresee a republication that supposedly happened long after the initial publication–twenty-six months after– by an attorney who has no relationship to the AANS.

Third, Dr. Lemons alleges that, in October 2023, defense counsel in separate litigation sought documents from Dr. Lemons relating to his suspension from the AANS as part of a deposition notice. Compl., ¶ 20. There is no allegation that such documents were produced, *i.e.* there was no republication. *See id*. Thus, Plaintiff's allegations are insufficient since "publication or republication to a third person is necessary to establish the cause of action of defamation." *Dible v. Haight Ashbury Free Clinics, Inc.* (2009) 170 Cal.App.4th 843, 855. Without that, there can be no liability. *Id*. ("Here we are clearly being asked to create a wider exception for claimants who have not republished where it is foreseeable that they might do so in the future. We decline to do so. Such a rule would require courts to engage in considerable speculation as to future conduct and lead to untenable attempts to speculate on future damage.").

## B. Dr. Lemons Seeks an Improper Judicial Review of the AANS' Private Disciplinary Decision.

Even if Dr. Lemons had brought suit within the limitations period, his claim is foreclosed by the doctrine of judicial non-interference in the affairs of a private, voluntary association. Dr. Lemons seeks a judicial determination that the AANS' findings were false. Compl., ¶¶ 15-16. Stated differently, he believes this Court should intervene and conduct its own determination of whether his testimony violated the AANS' Neurosurgical Expert Opinion Rules. It would be an extraordinary step for the Court to allow this claim to move forward.

California courts follow a well-established test for whether to interfere in the affairs of a private association. "Out of respect for a private association's autonomy and special competence, courts generally will not interfere with the internal affairs of such an organization or with the enforcement of its rules unless the determination of some civil or property right is involved." *Budwin v. Am. Psychological Assn.* (1994) 24 Cal.App.4th 875, 879. "It is true that courts will not

1 interfere with the disciplining or expelling of members of such associations where the action is
2 taken in good faith and in accordance with its adopted laws and rules. But if the decision of the
3 tribunal is contrary to its laws or rules, or it is not authorized by the by-laws of the association, a
4 court may review the ruling of the board and direct the reinstatement of the member." *Id*. "When a
5 voluntary association disciplines one of its members, the only function which the courts may
6 perform is to determine whether the association has acted within its powers in good faith, in
7 accordance with its laws and the law of the land." *Id*. (internal quotation marks omitted).

8   Recently, a California Court of Appeal explained that a court may decline to exercise
9 jurisdiction based on the doctrine of judicial noninterference. "The courts play only a very limited
10 role in adjudicating disputes concerning the affairs of private clubs and associations." *Hee Shen
11 Cemetery & Benevolent Ass'n v. Yeong Wo Ass'n* (2024) 100 Cal.App.5th 231, 238. "In many
12 disputes in which such rights and duties are at issue . . . the courts may decline to exercise
13 jurisdiction." *Id*. "Their determination not to intervene reflects their judgment that the resulting
14 burdens on the judiciary outweigh the interests of the parties at stake." *Id*. "One concern in such
15 cases is that judicial attempts to construe ritual or obscure rules and laws of private organizations
16 may lead the courts into [a] 'dismal swamp.'" *Id*. "[The California] Supreme Court highlighted
17 another concern: 'preserving the autonomy of such organizations.'" *Id*. (citing *California Dental
18 Assn. v. American Dental Assn.* (1979) 23 Cal.3d 346, 353). "It observed that courts 'must guard
19 against unduly interfering' in a private association's 'autonomy by substituting judicial judgment
20 for that of the [association] in an area where the competence of the court does not equal that of
21 the' association." *Hee Shen Cemetery & Benevolent Ass'n*, 100 Cal.App.5th at 239 (citing
22 *California Dental*, 23 Cal.3d at 354). "The standard for any court intervention in cases concerning
23 a private association's affairs is therefore quite high." *Hee Shen Cemetery & Benevolent Ass'n*,
24 100 Cal.App.5th at 239. "Courts will accept jurisdiction over a private voluntary association only
25 where the association abused its discretion by unreasonably construing a plain and unambiguous
26 provision of its bylaws." *Id*.

27   Here, there is no allegation that the AANS violated its bylaws or procedures (because no
28 such violation occurred). Dr. Lemons simply disagrees with the association's findings, which are

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

set forth in detail in the PCC Report. *See generally*, RJN Ex. D. Therefore, and consistent with the principles enumerated above, the Court should decline to exercise jurisdiction here and dismiss Plaintiff's Complaint.

### C. The Litigation Privilege Is Not Applicable to Disciplinary Action Taken by a Private, Voluntary Association.

Dr. Lemons' Complaint appears to allege that the "litigation privilege" somehow precludes the AANS from disciplining him for violating its Neurosurgical Expert Opinion Rules. *See* Compl., ¶¶ 11, 15. According to Dr. Lemons, the AANS could not discipline him for statements he made in the Idaho lawsuit because they were "related to and made during litigation." (*Id.* at ¶ 11.) This position is pure nonsense. The litigation privilege does not shield a member of a private, voluntary association from discipline for violating the association's rules.

"Subject to the scope of judicial review noted in the previous section [*i.e.*, the doctrine of judicial non-interference,] a voluntary association has the power to adopt the regulations that its membership sees fit." *Budwin*, 24 Cal.App.4th at 883-84. "Subject to this limited judicial oversight, the association's constitution and bylaws give it the power to regulate the conduct of its members and those provisions are the measure of its authority to discipline, suspend or expel." *Id*. "This disciplinary power is not barred by the possibility of governmental prosecution." *Id*. "Judicial authorities have made it clear that a perfectly legitimate objective of professional associations is to attempt to elevate professional standards established by the government." *Id*. "[A] private, voluntary, professional association is not precluded by the litigation privilege of [California Civil Code] section 47(b) from disciplining one of its members for making such representations in a judicial proceeding." *Id*.; *see also Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1494 ("The litigation privilege has never shielded one from all liability. One who makes an injurious communication may be criminally liable for perjury, **or subject to professional disciplinary proceedings**.") (emphasis added). Thus, the AANS was well within its rights to adjudicate the internal complaint brought against Dr. Lemons by a fellow member and subsequently discipline him for his violations of the AANS' Neurosurgical Expert Opinion Rules.

/ / /

**D.      The AANS Possessed an Absolute Privilege to Publish the Notice.**

The AANS has an absolute privilege to publish its findings regarding Dr. Hajjar's complaint against Dr. Lemons because, as a member of the AANS, Dr. Lemons consented to and agreed to comply with the association's rules and procedures. Compl. ¶¶ 10, 12; RJN Exhs. A-C. The Professional Conduct Program fact sheet states that "[u]pon finalization of any sanction, a brief write-up appears in [the online publication] *AANS Neurosurgeon*. The item will include the member's name and a brief summary of the action for which the member was sanctioned." RJN Ex. C at p. 2. The AANS' governing documents expressly place all of its members on notice that sanctions for violations of the Code of Ethics or other rules will be published.

California courts have long held that "the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation." *Kelly v. William Morrow & Co.* (1986) 186 Cal.App.3d 1625, 1632 (quoting Restatement (Second) of Torts § 583 (1977)). This principle is extended to circumstances, like this one, involving the consent of a member to a voluntary association to abide by its rules and procedures. *Cf. Rosenberg v. Am. Bowling Cong.*, 589 F. Supp. 547, 551-52 (M.D. Fla. 1984) ("This rule, by which [Rosenberg] agreed to be bound when he joined the ABC [ ], plainly contemplates the type of publication upon which [Rosenberg] bases his defamation suit. [Rosenberg] thus consented to the type of publication that resulted from ABC's suspension hearing. By virtue of that consent, ABC possessed an absolute privilege to publish to the GJBA the factual determinations upon which the Legal Committee based its decision to suspend Mr. Rosenberg."); *cf. Avery v. Cmty. Hosp. of the Monterey Peninsula*, No. H042030, 2018 WL 4959641, at *9 (Cal. Ct. App. Oct. 15, 2018), *as modified on denial of reh'g* (Nov. 13, 2018) (plaintiff "agree[d] to an investigation with knowledge of the contemplated publication of findings" and therefore her defamation claim failed due to "an absolute privilege under the doctrine of consent").

The rules of the Professional Conduct Program contemplate the type of publication upon which Dr. Lemon bases his defamation claim. Dr. Lemons thus consented to publication of the Notice of his suspension. By virtue of that consent, the AANS possessed an absolute privilege to publish the Notice and Dr. Lemons' defamation claim must be dismissed.

15

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**E.      The Doe Defendants Should Be Dismissed With Prejudice.**

The Ninth Circuit has held that the inclusion of a Doe defendant destroys diversity jurisdiction and warrants dismissal of any claim asserted against such a defendant. *See, e.g., Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1981) ("The[ ] inclusion [of several Doe defendants] destroys [diversity of citizenship] jurisdiction and the claim was properly dismissed, if only for this reason.").[3] Here, Dr. Lemons seeks to include the unnamed defendants "DOES 1 through 100." Compl., ¶ 3. These defendants must be dismissed from the case.

## V.      CONCLUSION

For all the foregoing reasons, Defendant American Association of Neurological Surgeons, Inc. respectfully requests that the Court dismiss this action in its entirety pursuant to Rule 12(b)(6) with prejudice with respect to all defendants and for all other relief the Court deems just and proper.

DATED:  July 12, 2024                         DOWNEY BRAND LLP

By:   */s/ William R. Warne*
WILLIAM R. WARNE
DARIA A. GOSSETT
Attorneys for Defendants,
AMERICAN ASSOCIATION OF
NEUROLOGICAL SURGEONS, INC.

- AND –

ICE MILLER LLP
MICHAEL A. CHABRAJA (pro hac vice application pending)
ALEXANDER S. VALDES (pro hac vice application pending)

---

[3] The AANS recognizes that there is disagreement among District Courts in California regarding the Ninth Circuit's holding in *Garter-Bare*. *See, e.g.*, *Gardiner Fam., LLC v. Crimson Res. Mgmt. Corp.*, 147 F. Supp. 3d 1029 (E.D. Cal. 2015). However, *Garter-Bare* has not been overruled and dismissing the Doe defendants is important here to establish proper diversity jurisdiction.