ICE MILLER
MICHAEL CHABRAJA (*pro hac vice*)
ALEXANDER S. VALDES (*pro hac vice*)
200 W. Madison Street, Suite 3500
Chicago, IL 60606
Telephone:   312.726.8149
Facsimile:    312.726.7102
michael.chabraja@icemiller.com
alex.valdes@icemiller.com

DOWNEY BRAND LLP
WILLIAM R. WARNE (Bar No. 141280)
bwarne@downeybrand.com
DARIA A. GOSSETT (Bar No. 316717)
dgossett@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:   916.444.1000
Facsimile:    916.444.2100

Attorneys for Defendant,
AMERICAN ASSOCIATION OF
NEUROLOGICAL SURGEONS, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANBUREN LEMONS, M.D.,<br><br>       Plaintiff,<br><br>       v.<br><br>AMERICAN ASSOCIATION OF NEUROLOGICAL SURGEONS, INC.; and DOES 1 through 100, inclusive,<br><br>       Defendants. | Case No. 2:24-cv-01118-DAD-CKD<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**<br><br>Date:     October 15, 2024<br>Time:    1:30 p.m.<br>Crtrm.:  4 (15th floor)<br><br>Judge:   Hon. Dale A. Drozd |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................1

II. PERTINENT ALLEGATIONS AND FACTUAL BACKGROUND ..................................2

III. LEGAL STANDARD .........................................................................................................5

IV. ARGUMENT ......................................................................................................................6

    A. Dr. Lemons' Claim Is Barred by the One-year Statute of Limitations. .....................6

        1. The AANS Cannot Be Liable for the Notice of Disciplinary Action Published in February 2021 ..............................................................................6

        2. The AANS Cannot Be Liable for a Purported "Republication" of the Notice. ................................................................................................................7

    B. Dr. Lemons Seeks an Improper Judicial Review of the AANS' Private Disciplinary Decision. .................................................................................................9

    C. The Litigation Privilege Is Not Applicable to Disciplinary Action Taken by a Private, Voluntary Association. ...............................................................................10

    D. The AANS Possessed an Absolute Privilege to Publish the Notice. ........................11

    E. The Doe Defendants Should Be Dismissed With Prejudice. ...................................12

V. CONCLUSION .................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Arnold v. Bay Fin. Co. LLC*,
   No. 1:21-CV-1182 JLT SKO, 2022 WL 658137 (E.D. Cal. Mar. 4, 2022) .............................. 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 5, 6

*Balisteri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1990) ................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 5, 6

*Gardiner Fam., LLC v. Crimson Res. Mgmt. Corp.*,
   147 F. Supp. 3d 1029 (E.D. Cal. 2015) ................................................................................. 12

*Garter-Bare Co. v. Munsingwear, Inc.*,
   650 F.2d 975 (9th Cir. 1981) ........................................................................................... 12, 13

*Hall v. Kraft Heinz Food Co. (LLC)*,
   No. 119CV00565LJOBAM, 2019 WL 2598764 (E.D. Cal. June 25, 2019) ....................... 5, 7

*Harris v. Dillman*,
   No. 2:08CV0098-GEB-CMK, 2008 WL 5100224 (E.D. Cal. Dec. 1, 2008) ......................... 7

*Roberts v. McAfee, Inc.*,
   660 F.3d 1156 (9th Cir. 2011) ................................................................................................. 7

*Rosenberg v. Am. Bowling Cong.*,
   589 F. Supp. 547 (M.D. Fla. 1984) ....................................................................................... 12

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................................................. 6

*Teleflex Medical Incorporated v. National Union Fire Insurance Company Of Pittsburgh*,
   851 F.3d 976 (9th Cir. 2017) ................................................................................................... 6

**State Cases**

*Avery v. Cmty. Hosp. of the Monterey Peninsula*,
   No. H042030, 2018 WL 4959641 (Cal. Ct. App. Oct. 15, 2018), *as modified on denial of reh'g* (Nov. 13, 2018) ............................................................................................ 12

*Budwin v. Am. Psychological Assn.*
   (1994) 24 Cal.App.4th 875 ............................................................................................... 9, 11

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Dible v. Haight Ashbury Free Clinics, Inc.*
(2009) 170 Cal.App.4th 843 ............................................................................................. 8, 9

*Hee Shen Cemetery & Benevolent Ass'n v. Yeong Wo Ass'n*
(2024) 100 Cal.App.5th 231 ............................................................................................. 9, 10

*Kelly v. William Morrow & Co.*
(1986) 186 Cal.App.3d 1625 ............................................................................................. 12

*Live Oak Publishing Co. v. Cohagan*
(1991) 234 Cal.App.3d 1277 ............................................................................................. 8

*Shively v. Bozanich*
(2003) 31 Cal.4th 1230 ..................................................................................................... 6

*Traditional Cat Assn., Inc. v. Gilbreath*
(2004) 118 Cal.App.4th 392 ............................................................................................. 7

*Wentland v. Wass*
(2005) 126 Cal.App.4th 1484 ........................................................................................... 11

**Rules**

Rule 12(b)(6) ............................................................................................................................ 5, 13

# I. INTRODUCTION

This lawsuit arises out of a dispute between a private, voluntary professional association and one of its former members. Dr. Michael Hajjar ("Dr. Hajjar"), is a member of Defendant American Association of Neurological Surgeons, Inc. ("AANS" or "Defendant"). In November 2018, Dr. Hajjar instituted an internal grievance against another AANS member, Plaintiff Dr. VanBuren Lemons ("Dr. Lemons" or "Plaintiff"). In that grievance, Dr. Hajjar alleged that Dr. Lemons violated both the AANS Rules for Neurosurgical Medical/Legal Expert Opinion Services ("the Neurosurgical Expert Opinion Rules") and the AANS Code of Ethics. After fully adjudicating the grievance, the AANS Board of Directors found that Dr. Lemons had violated certain Neurosurgical Expert Opinion Rules and, consequently, voted to suspend his membership in the association for one year. Seeking to have this Court revisit the merits of the AANS' internal disciplinary decision, Plaintiff filed this action against the AANS and 100 unnamed Doe defendants.

In the lone claim of his First Amended Complaint, Plaintiff alleges that certain statements contained in the notice of suspension – which the AANS posted in its online publication in accordance with its rules and procedures – were defamatory. This claim fails as a matter of law. First, the claim is untimely. Dr. Lemons waited over three years to bring suit despite the one-year statute of limitations in California for defamation claims. This alone is fatal to his claim. Second, regardless of how he labels his claim, it is abundantly clear that Dr. Lemons is seeking to have this Court conduct a collateral inquiry into the merits of the AANS' decision to suspend his membership. California law is clear that a court will not intervene in the internal affairs of a private, voluntary membership organization such as the AANS. Third, Plaintiff's claim for defamation fails because, as a member of the AANS, Dr. Lemons agreed to be bound by the AANS' rules and procedures. The rules and procedures contemplate the type of publication that resulted from Dr. Lemons' suspension. Thus, the AANS possessed an absolute privilege to publish the factual findings and determinations arising out of the internal grievance.

Notably, the AANS previously raised these deficiencies in its Motion to Dismiss Plaintiff's Complaint that was filed on July 12, 2024. In lieu of responding to the Motion to Dismiss,

1

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Plaintiff filed his First Amended Complaint on August 2, 2024. However, Plaintiff's second bite at the apple fares no better; the same fatal deficiencies remain. Accordingly, the AANS respectfully submits that Plaintiff's First Amended Complaint should be dismissed with prejudice.

## II. PERTINENT ALLEGATIONS AND FACTUAL BACKGROUND

Dr. Lemons is a neurosurgeon licensed in California where he practices neurosurgical medicine. (Am. Compl., ¶ 1.) The AANS is an association of neurosurgeons that offers educational opportunities and publications to its members. (*Id*. at ¶ 2.) Dr. Lemons was a member of the AANS at all times relevant to the allegations in the First Amended Complaint.[1] (*Id*. at ¶ 12.)

Dr. Lemons has served as an expert witness in a number of cases. (*Id*. at ¶ 1.) In 2018, Dr. Lemons testified as an expert witness in a medical malpractice lawsuit in Idaho (the "Idaho lawsuit") in which Dr. Hajjar was a defendant. (*Id*. at ¶ 10.) Dr. Hajjar is a neurosurgeon and a member of AANS. (*Id*.) Both during discovery and at trial, Dr. Lemons opined in the Idaho lawsuit that Dr. Hajjar's treatment of a patient for intracranial pressure following a head injury was below the standard of care for neurosurgeons, and, further, that Dr. Hajjar's sub-standard treatment caused the patient's injury. (*Id*. at ¶ 11.)

The AANS has an established set of governing documents that sets forth, among other things, the duties and responsibilities of all members and the rules/procedures for grievances alleging violations of the duties and responsibilities. (*Id*. at ¶¶ 7, 12-14;) *see also Request for Judicial Notice* ("RJN"), Ex. A. Each member of the AANS agrees to be bound by the association's governing documents. (Am. Compl., ¶ 14.) The governing documents are publicly available on a single webpage at: https://www.aans.org/about/leadership-governance/bylaws-codes-and-guidelines/. RJN, Ex. A. The AANS' governing documents establish a process by which a member may proffer charges alleging that another Member has failed to maintain good professional standing, which can involve violations of the AANS' Code of Ethics and/or the Neurosurgical Expert Opinion Rules. (Am. Compl., ¶ 12; Am. Compl., Ex. 1.)

---

[1] While outside the allegations of the First Amended Complaint, Article II, Section 3 of the AANS Bylaws states that a resignation of membership is not effective until acted upon by the Board of Directors. The Board of Directors is authorized under the Bylaws to delay or refuse a member's resignation if there is a pending grievance against that member.

2

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

DOWNEY BRAND LLP

1    Following a jury verdict in his favor in the Idaho lawsuit, Dr. Hajjar submitted an internal
2    complaint to the AANS alleging that Dr. Lemons' expert testimony violated the Code of Ethics
3    and the Neurosurgical Expert Opinion Rules. (Am. Compl., ¶ 12.) Consistent with its procedures,
4    the AANS convened a panel of eight members of its Professional Conduct Committee (the
5    "PCC") and held a Hearing in San Francisco, California, on October 20, 2019, to evaluate Dr.
6    Hajjar's complaint. (*Id*.) A court reporter transcribed the hearing. (*Id*.) Dr. Hajjar attended the
7    hearing and made a presentation regarding his treatment of the patient. RJN, Ex. B, p. 11.
8    Although Dr. Lemons received notice well in advance of the hearing, he elected not to attend. *Id*.
9    at 10-11.  Following the hearing, the members of the PCC authored a Report titled, Report of the
10   Professional Conduct Committee of the American Association of Neurological Surgeons dated
11   December 16, 2019 ("PCC Report").[2] (Am. Compl., ¶ 13;) *see also* RJN, Ex. B. The PCC Report
12   contained its findings regarding Dr. Hajjar's charges against Dr. Lemons. RJN, Ex. B, p. 12–18.
13   The PCC found that Dr. Lemons had violated four separate Neurosurgical Expert Opinion Rules in
14   his testimony in the Idaho lawsuit. *Id*. at p. 15–17. Notably, the PCC also found that Dr. Lemons
15   did not violate four of the Neurosurgical Expert Opinion Rules raised by Dr. Hajjar. *Id*. at p. 17.
16   The PCC recommended to the AANS' Board of Directors that Dr. Lemons be suspended from the
17   AANS for one year as a result of his violations of the Neurosurgical Expert Opinion Rules. *Id*. at
18   p. 18.

19   On November 21, 2020, the AANS' Board of Directors met to consider the PCC's findings
20   and recommendation. (Am. Compl., ¶ 14.) Following its own review and analysis of the evidence
21   presented in the grievance, the Board accepted the PCC's findings and voted to suspend Dr.
22   Lemons' membership for one year. (*Id*.) The AANS Professional Conduct Program fact sheet,
23   which, again, is posted on the AANS website and available to all members, along with all of the
24   AANS' governing documents, states that "[u]pon finalization of any sanction, a brief write-up
25   appears in [the online publication] *AANS Neurosurgeon*. The item will include the member's name
26   and a brief summary of the action for which the member was sanctioned." (Am. Compl., Ex. 1 at

---

[2] The Court may take judicial notice of this document for the reasons set forth in the accompanying Request for Judicial Notice.

p. 2.) The fact sheet is attached to Plaintiff's First Amended Complaint as Exhibit 1.

Consistent with these procedures and the governing documents, on February 2, 2021, the AANS published a Notice of Disciplinary Action (the "Notice") regarding the suspension of Dr. Lemons in *AANS Neurosurgeon* on the AANS website: https://www.aansneurosurgeon.org. (Am. Compl., ¶ 14; Am. Compl., Ex. 2.) The Notice is attached to Plaintiff's First Amended Complaint as Exhibit 2. The Notice stated, among other things, that the AANS suspended Dr. Lemons because he violated Sections A.1, A.2, A.3, and A.4 of the Neurosurgical Expert Opinion Rules and because he "demonstrated improper advocacy, excluded valid alternative viewpoints, did not identify personal opinions that varied from generally accepted neurosurgical practice, and failed to acknowledge that the standard of care includes a range of options." (Am. Compl., ¶ 14.)

Dr. Lemons clearly disagrees with the findings of the PCC and the AANS Board of Directors in the grievance. He alleges in conclusory fashion that the PCC and Board of Directors "failed to use due diligence prior to publishing these statements. . . . As neurosurgeons, [they] had the education and training to know that their statements were false or had serious doubts about the truth of the statements." (*Id*. at ¶¶ 15-16.)

Dr. Lemons alleges in his First Amended Complaint that the Notice (but not the link, somehow) was removed from the internet sometime after February 2, 2021, so that when selecting the link, the defamatory statements in the posting were no longer available to view. (*Id*. at ¶ 17.) He further alleges that, on or about March 26, 2024, the AANS republished the Notice on the internet. (*Id*.) While the AANS rejects the far-fetched allegation that the Notice was removed from the internet (while maintaining the link) and then reposted, that allegation is immaterial for purposes of this Motion to Dismiss Plaintiff's First Amended Complaint.

In April 2023, a defense attorney in a separate medical malpractice lawsuit recited statements from the Notice regarding Dr. Lemons in a trial brief that is available on the Stanislaus County Superior Court website. (*Id*. at ¶ 19.) The defense attorney also questioned Dr. Lemons at trial regarding the AANS' findings that Dr. Lemons violated the association's Neurosurgical Expert Opinion Rules. (*Id*.) In October 2023, defense counsel for the City of Sacramento in a separate lawsuit sought documents from Dr. Lemons regarding his suspension from the AANS as

part of a deposition notice. (*Id*. at ¶ 20.) There is no allegation that such documents were ever produced. (*See id*.) Dr. Lemons also alleges that he is "now compelled and/or coerced to publish the existence and substance of AANS' statements to attorneys who seek to retain him as an expert witness." (*Id*. at ¶ 22.) However, there is no allegation that such publication has been made. (*See id*.)

Dr. Lemons filed his original Complaint against the AANS on April 12, 2024 – more than thirty-eight months after the AANS published the Notice. (Dkt. No. 1.) Plaintiff's First Amended Complaint does not cure any of the deficiencies raised in the AANS' prior Motion to Dismiss. (Dkt. No. 8.) Instead, he has rehashed the prior allegations with minor changes in the hopes of stating a valid claim. As shall be demonstrated herein, the allegations in Plaintiff's First Amended Complaint fail to state a claim for defamation against the AANS that is plausible on its face and dismissal with prejudice is warranted.

### III.     LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Hall v. Kraft Heinz Food Co. (LLC)*, No. 119CV00565LJOBAM, 2019 WL 2598764, at *2 (E.D. Cal. June 25, 2019). Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell* Atl. *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555

DOWNEY BRAND LLP

(internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. As demonstrated below, Plaintiff has failed to allege sufficient facts to survive the AANS' Motion to Dismiss.

Lastly, in diversity cases, a "federal court must follow the state's intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Teleflex Medical Incorporated v. National Union Fire Insurance Company Of Pittsburgh*, 851 F.3d 976, 982 (9th Cir. 2017).

### IV.   ARGUMENT

**A.   Dr. Lemons' Claim Is Barred by the One-year Statute of Limitations.**

   **1.   The AANS Cannot Be Liable for the Notice of Disciplinary Action Published in February 2021.**

"In California, claims for defamation are subject to a one-year statute of limitations." *Arnold v. Bay Fin. Co. LLC*, No. 1:21-CV-1182 JLT SKO, 2022 WL 658137, at *5 (E.D. Cal. Mar. 4, 2022) (citing Cal. Code Civ. Proc. § 340(c) *and Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1246 ("the statute of limitations for defamation . . . requires that an action be filed within one year of accrual of the cause of action"). "Causes of action for defamation accrue at the time of publication." *Arnold*, No. 1:21-CV-1182 JLT SKO, 2022 WL 658137, at *5 (citing *Shively*, 31 Cal.4th at 1247 *and Preas v. Watchtower Bible & Tract Soc'y of N.Y.*, 2015 WL 672152, at *3 (E.D. Cal. Feb. 17, 2015) ("Under California law, defamation claims are subject to a one-year statute of limitations, meaning they must be brought within one year of publication of the defamatory statement or they are time-barred from being heard in court")).

Dr. Lemons alleges that the defamatory statements that serve as the basis for his claim

were published in the Notice on February 2, 2021. (Am. Compl., ¶¶ 14-18.) Thus, the limitations period ended one year later on February 2, 2022.[3] Dr. Lemons did not file suit against the AANS until April 12, 2024. Therefore, any defamation claims that Dr. Lemons may have against the AANS based on the Notice are time-barred. *Harris v. Dillman*, No. 2:08CV0098-GEB-CMK, 2008 WL 5100224 (E.D. Cal. Dec. 1, 2008) (dismissing defamation claim without leave to amend where allegations showed the limitations period had expired).

### 2. The AANS Cannot Be Liable for a Purported "Republication" of the Notice.

Perhaps recognizing his claim is time-barred, Dr. Lemons alleges that the Notice was subsequently "republished." These allegations are insufficient as a matter of law. California law only allows a plaintiff to avoid the statute of limitations in limited circumstances that are not applicable here. As set forth below, the First Amended Complaint identifies four alleged "republications," none of which rescue his time-barred claim for defamation against the AANS.

First, Dr. Lemons alleges that the AANS removed the Notice (but not the link) from its website sometime after February 2, 2021, and then around March 26, 2024, the AANS made the Notice available again on its website. (Am. Compl., ¶ 17.) "The Ninth Circuit has held . . . that 'under California law, a statement on a website is not republished [and the statute of limitations is not reset] unless the statement itself is substantively altered or added to, or the website is directed to a new audience.'" *Hall*, No. 119CV00565LJOBAM, 2019 WL 2598764, at *5 (bracketed phrase in original) (citing *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012)). This "single-publication rule" arose in the context of defamation and other tort claims and "is designed to provide repose to defendants by precluding stale claims based on dated but still-lingering mass communications." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1168 (9th Cir. 2011). State and federal courts in California have determined that the single-publication rule applies to the internet under California law. *Id*. at 1167 ("Although the California Supreme Court has not addressed the issue, the California Courts of Appeal have uniformly applied the rule to websites."); *Traditional Cat*

---

[3] "The discovery rule is not applicable to these claims because [Dr. Lemons] was not prevented from accessing these defamatory statements." *Harris v. Dillman*, No. 2:08CV0098-GEB-CMK, 2008 WL 5100224, at *2 (E.D. Cal. Dec. 1, 2008).

7

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 404 (stating that "we have very little doubt" that the California Supreme Court would apply the single-publication rule to websites).

Here, Dr. Lemons has not and cannot allege that the AANS altered or added to the statements in the Notice, or that the AANS' website was ever directed to a new audience. The Notice currently on the AANS' website is not a "republication" as a matter of law.

Second, although Dr. Lemons alleges that an attorney in a separate malpractice action referenced language from the Notice in April 2023 (Am. Compl., ¶ 19), this allegation is insufficient to support a defamation claim against the AANS. In order to hold a defendant liable for defamation, "the publication must be done by the defendant." *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1284. "There is an exception to this rule. When it was foreseeable that a defendant's act would result in publication to a third person, the plaintiff may maintain a libel action." *Id*. Here, Dr. Lemons has not alleged any facts sufficient to demonstrate that republication of the Notice by an attorney in a separate lawsuit was somehow foreseeable. The AANS cannot be expected to foresee a republication that supposedly happened long after the initial publication, by an attorney who has no relationship to the AANS and allegedly did so some twenty-six months after that publication.

Third, Dr. Lemons alleges that, in October 2023, defense counsel in separate litigation sought documents from Dr. Lemons relating to his suspension from the AANS as part of a deposition notice. (Am. Compl., ¶ 20.) There is no allegation that such documents were produced, *i.e.* there was no republication. (*See id*.) Thus, Plaintiff's allegations are insufficient since "publication or republication to a third person is necessary to establish the cause of action of defamation." *Dible v. Haight Ashbury Free Clinics, Inc.* (2009) 170 Cal.App.4th 843, 855. Without that, there can be no liability. *Id*. ("Here we are clearly being asked to create a wider exception for claimants who have not republished where it is foreseeable that they might do so in the future. We decline to do so. Such a rule would require courts to engage in considerable speculation as to future conduct and lead to untenable attempts to speculate on future damage.").

Fourth, Dr. Lemons alleges that he will have to publish the AANS' allegedly defamatory statements to any lawyer who seeks to retain him as an expert. There is no allegation that such

publication has occurred. This Court should decline to engage in speculation as to Dr. Lemon's future conduct.  Once again, without publication there can be no liability. *Dible*, 170 Cal.App.4th at 855.

### B. Dr. Lemons Seeks an Improper Judicial Review of the AANS' Private Disciplinary Decision.

Even if Dr. Lemons had brought suit within the limitations period, his claim is foreclosed by the doctrine of judicial non-interference in the affairs of a private, voluntary association. Dr. Lemons seeks a judicial determination that the AANS' findings set forth in the Notice were false. (Am. Compl., ¶¶ 15-16.) Stated differently, he believes this Court should intervene and conduct its own determination of whether his testimony violated the AANS' Neurosurgical Expert Opinion Rules. It would be an extraordinary step for the Court to allow this claim to move forward.

California courts follow a well-established test for whether to interfere in the affairs of a private association. "Out of respect for a private association's autonomy and special competence, courts generally will not interfere with the internal affairs of such an organization or with the enforcement of its rules unless the determination of some civil or property right is involved." *Budwin v. Am. Psychological Assn.* (1994) 24 Cal.App.4th 875, 879. "It is true that courts will not interfere with the disciplining or expelling of members of such associations where the action is taken in good faith and in accordance with its adopted laws and rules. But if the decision of the tribunal is contrary to its laws or rules, or it is not authorized by the by-laws of the association, a court may review the ruling of the board and direct the reinstatement of the member." *Id*. "When a voluntary association disciplines one of its members, the only function which the courts may perform is to determine whether the association has acted within its powers in good faith, in accordance with its laws and the law of the land." *Id*. (internal quotation marks omitted).

Recently, a California Court of Appeal explained that a court may decline to exercise jurisdiction based on the doctrine of judicial noninterference. "The courts play only a very limited role in adjudicating disputes concerning the affairs of private clubs and associations." *Hee Shen Cemetery & Benevolent Ass'n v. Yeong Wo Ass'n* (2024) 100 Cal.App.5th 231, 238. "In many disputes in which such rights and duties are at issue . . . the courts may decline to exercise

9
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

jurisdiction." *Id*. "Their determination not to intervene reflects their judgment that the resulting burdens on the judiciary outweigh the interests of the parties at stake." *Id*. "One concern in such cases is that judicial attempts to construe ritual or obscure rules and laws of private organizations may lead the courts into [a] 'dismal swamp.'" *Id*. "[The California] Supreme Court highlighted another concern: 'preserving the autonomy of such organizations.'" *Id*. (citing *California Dental Assn. v. American Dental Assn.* (1979) 23 Cal.3d 346, 353). "It observed that courts 'must guard against unduly interfering' in a private association's 'autonomy by substituting judicial judgment for that of the [association] in an area where the competence of the court does not equal that of the' association." *Hee Shen Cemetery & Benevolent Ass'n*, 100 Cal.App.5th at 239 (citing *California Dental*, 23 Cal.3d at 354). "The standard for any court intervention in cases concerning a private association's affairs is therefore quite high." *Hee Shen Cemetery & Benevolent Ass'n*, 100 Cal.App.5th at 239. "Courts will accept jurisdiction over a private voluntary association only where the association abused its discretion by unreasonably construing a plain and unambiguous provision of its bylaws." *Id*.

Here, there are no allegations whatsoever that the AANS violated its bylaws or procedures (because no such violation occurred). Dr. Lemons simply disagrees with the AANS' findings, which are set forth in detail in the PCC Report. *See generally*, RJN Ex. B. Therefore, and consistent with the principles enumerated above, the Court should decline to exercise jurisdiction here and dismiss Plaintiff's First Amended Complaint based on the doctrine of judicial noninterference.

**C.      The Litigation Privilege Is Not Applicable to Disciplinary Action Taken by a Private, Voluntary Association.**

Dr. Lemons' First Amended Complaint appears to allege that the "litigation privilege" somehow precludes the AANS from disciplining him for violating its Neurosurgical Expert Opinion Rules. (*See* Am. Compl., ¶¶ 11, 15.) According to Dr. Lemons, the AANS could not discipline him for statements he made in the Idaho lawsuit because they were "related to and made during litigation." (*Id*. at ¶ 11.) This position is pure nonsense. The litigation privilege does not shield a member of a private, voluntary association from discipline for violating the association's

10

rules.

"[A] private, voluntary, professional association is not precluded by the litigation privilege of [California Civil Code] section 47(b) from disciplining one of its members for making such representations in a judicial proceeding." *Id.*; *see also Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1494 ("The litigation privilege has never shielded one from all liability. One who makes an injurious communication may be criminally liable for perjury, **or subject to professional disciplinary proceedings**.") (emphasis added). This is because, "[s]ubject to the scope of judicial review noted in the previous section [*i.e.*, the doctrine of judicial non-interference,] a voluntary association has the power to adopt the regulations that its membership sees fit." *Budwin*, 24 Cal.App.4th at 883-84. "Subject to this limited judicial oversight, the association's constitution and bylaws give it the power to regulate the conduct of its members and those provisions are the measure of its authority to discipline, suspend or expel." *Id.* "This disciplinary power is not barred by the possibility of governmental prosecution." *Id.* "Judicial authorities have made it clear that a perfectly legitimate objective of professional associations is to attempt to elevate professional standards established by the government." *Id.* Thus, the AANS was well within its rights to adjudicate the internal complaint brought against Dr. Lemons by a fellow member and subsequently discipline him for his violations of the AANS' Neurosurgical Expert Opinion Rules.

**D.     The AANS Possessed an Absolute Privilege to Publish the Notice.**

The AANS has an absolute privilege to publish its findings regarding Dr. Hajjar's complaint against Dr. Lemons because, as a member of the AANS, Dr. Lemons consented to and agreed to comply with the association's rules and procedures. (Am. Compl. ¶¶ 14, Ex. 1;) RJN Ex. A. The Professional Conduct Program fact sheet states that "[u]pon finalization of any sanction, a brief write-up appears in [the online publication] *AANS Neurosurgeon*. The item will include the member's name and a brief summary of the action for which the member was sanctioned." (Am. Compl., Ex. 1 at p. 2.) Dr. Lemons attempts to sidestep the fact sheet by claiming it was not part of the rules to which members of the AANS agree, despite the fact that the fact sheet is located right next to the AANS' other rules and procedures online. RJN, Ex. A. The AANS' governing documents expressly place all of its members on notice that sanctions for violations of the Code of

11

Ethics or other rules will be published.

California courts have long held that "the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation." *Kelly v. William Morrow & Co.* (1986) 186 Cal.App.3d 1625, 1632 (quoting Restatement (Second) of Torts § 583 (1977)). This principle is extended to circumstances, like this one, involving the consent of a member to a voluntary association to abide by its rules and procedures. *Cf. Rosenberg v. Am. Bowling Cong.*, 589 F. Supp. 547, 551-52 (M.D. Fla. 1984) ("This rule, by which [Rosenberg] agreed to be bound when he joined the ABC [ ], plainly contemplates the type of publication upon which [Rosenberg] bases his defamation suit. [Rosenberg] thus consented to the type of publication that resulted from ABC's suspension hearing. By virtue of that consent, ABC possessed an absolute privilege to publish to the GJBA the factual determinations upon which the Legal Committee based its decision to suspend Mr. Rosenberg."); *cf. Avery v. Cmty. Hosp. of the Monterey Peninsula*, No. H042030, 2018 WL 4959641, at *9 (Cal. Ct. App. Oct. 15, 2018), *as modified on denial of reh'g* (Nov. 13, 2018) (plaintiff "agree[d] to an investigation with knowledge of the contemplated publication of findings" and therefore her defamation claim failed due to "an absolute privilege under the doctrine of consent").

The rules of the Professional Conduct Program contemplate the type of publication upon which Dr. Lemon bases his defamation claim. Dr. Lemons thus consented to publication of the Notice of his suspension. By virtue of that consent, the AANS possessed an absolute privilege to publish the Notice and Dr. Lemons' defamation claim must be dismissed.

E.     **The Doe Defendants Should Be Dismissed With Prejudice.**

The Ninth Circuit has held that the inclusion of a Doe defendant destroys diversity jurisdiction and warrants dismissal of any claim asserted against such a defendant. *See, e.g., Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1981) ("The[ ] inclusion [of several Doe defendants] destroys [diversity of citizenship] jurisdiction and the claim was properly dismissed, if only for this reason.").[4] Here, Dr. Lemons seeks to include the unnamed defendants

---

[4] The AANS recognizes that there is disagreement among District Courts in California regarding the Ninth Circuit's holding in *Garter-Bare. See, e.g.*, *Gardiner Fam., LLC v. Crimson Res. Mgmt.*

1  "DOES 1 through 100." (Am. Compl., ¶ 3.) These defendants must be dismissed from the case.

## V. CONCLUSION

For all the foregoing reasons, Defendant American Association of Neurological Surgeons, Inc. respectfully requests that the Court dismiss this action in its entirety pursuant to Rule 12(b)(6) with prejudice with respect to all defendants and for all other relief the Court deems just and proper.

DATED:  August 30, 2024  DOWNEY BRAND LLP

By: _/s/ William R. Warne_
WILLIAM R. WARNE
DARIA A. GOSSETT
Attorneys for Defendant,
AMERICAN ASSOCIATION OF
NEUROLOGICAL SURGEONS, INC.

- AND –

ICE MILLER LLP
MICHAEL A. CHABRAJA (*pro hac vice*)
ALEXANDER S. VALDES (*pro hac vice*)

4227201

---

*Corp.*, 147 F. Supp. 3d 1029 (E.D. Cal. 2015). However, *Garter-Bare* has not been overruled and dismissing the Doe defendants is important here to establish proper diversity jurisdiction.